Elizabeth Halverson
ELIZABETH A. HALVERSON, P.C.
2722 3rd Avenue North, Suite 400
Billings, MT  59101
tel: (406) 294-2020
fax: (406) 294-9359
*ehalversonlaw@180com.net*

James R. Halverson
HALVERSON & GILBERT, P.C.
Suite 301, 1001 S.  24th Street West
P.O. Box 80470
Billings, MT 59108-1011
tel: (406) 652-1011
fax: (406) 652-8102
*jhalverson@hglaw.net*

Attorneys for Lisa Pumphrey

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| **LISA PUMPHREY**,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>**Cincinnati Insurance Company,** a foreign corporation, and<br>**Michael Delaney**, individually,<br><br>　　　　　　　　　Defendants. | CV  05-14-BLG-RFC-CSO<br><br><br>**Plaintiff's Memorandum In Support of Plaintiff's *Third* Motion to Compel Production of Documents** |

　　　Plaintiff submits the following Memorandum in support of her Third Motion to Compel

Cincinnati's production of documents.

1

**I.    Standard of Review**

This Court has broad discretion to address failures of discovery. *Blackburn v. U.S.,* 100 F.3d 1426 (CA9, 1996).

**II.    Background**

Lisa Pumphrey was severely injured in an admitted liability accident in June, 2001. Cincinnati did not pay $45,000 in medical expenses until Jan. 4, 2005 (the second day of trial), and its largest offer prior to trial was $200,000. The jury awarded $3.9 million. The issues in this bad faith case are whether Cincinnati conducted a reasonable investigation, complied with its *Ridley* obligations, and effectuated prompt fair settlement.

Cincinnati asserts that its bases in fact or law, justifying its conduct, are that Plaintiff's counsel agreed with defense counsel at the Gough Firm, prior to the Oct. 8, 2004 expert disclosure deadline, that Plaintiff would undergo an IME, and then reneged.

The sole piece of evidence supporting that assertion is the Affidavit of Gough attorney Rob Cameron dated Nov. 2, 2006. The Affidavit contradicts Mr. Cameron's conduct in the District Court, [1] the District Court's findings of no agreement and no just cause to modify the scheduling order, the Montana Supreme Court's affirmation of that finding, Cincinnati's Rule 30(b)(6) testimony and admissions, [2] and documents from the incomplete production of attorney files that Cincinnati relies upon for its defense.

---

[1] Mr. Cameron never filed an expert disclosure, never filed an affidavit from any doctor, and did not file a motion for more time until <u>three weeks</u> after the deadline. He provided no just cause, filed no Affidavit of his own, did not file a reply brief, did not notice the motion for hearing, did not ask the Court to continue the trial date, and did not argue surprise or prejudice.

[2] See, Exhibit F to Plaintiff's March 30, 2007 Status Report on Discovery; excerpts from Cincinnati deposition.

In fact, documents in Cincinnati's partial production so far show Cincinnati and the Gough Firm admitting that Plaintiff did not agree to an IME, and show that an IME played no role in Cincinnati's decision making. Here are examples from five different documents:

1. **Mr. Cameron's Sept. 24, 2004 Interim Status Report to Cincinnati**. *Exhibit A,* p.1.

    Mr. Cameron prepared Exhibit A two weeks before the expert disclosure deadline in the Scheduling Order. He acknowledges specifically that "... to date, Plaintiff's counsel has not agreed to an IME... " – which directly contradicts his Affidavit dated Nov. 2, 2006, filed in this bad faith case, alleging that Plaintiff's counsel "expressly agreed" to an IME.

2. **Mr. Cameron's Nov. 2, 2004 Confidential Mediation Memorandum**, copied to Cincinnati; *Exhibit B, p. 2.*

    Mr. Cameron prepared Exhibit B almost four weeks after the expert disclosure deadline and two months before trial. Again, he specifically references "Plaintiff's counsel's refusal to agree to an Independent Medical Examination... " – which directly contradicts his Affidavit.

3. **Cincinnati's internal Trial Report, Dec. 27, 2004,** *Exhibit C.*

    Cincinnati prepared Exhibit C, its own internal Report, just one week before trial. Significantly, it makes no mention whatsoever of a records review, IME, or need for additional information. Instead, Cincinnati states: "We are prepared to try the case" – which directly contradicts Cincinnati's current assertions that its conduct in refusing to pay Lisa's medical expenses until the eve of trial, and refusal to make an offer of more than $200,000, was justified by Plaintiff's not agreeing to an IME.

4. **Mr. Cameron's Post-Trial Report to Cincinnati, Jan. 11, 2005;** *Exhibit D, p. 4.*

    Mr. Cameron prepared Exhibit D one week after the verdict, and reported to Cincinnati: "We carefully considered whether to retain medical and economic experts, but ultimately concluded that retaining such experts was not indicated because..... therefore, we determined that calling our own experts would give too much credence to the plaintiff's claims...."
    This Post-Trial Report, like Mr. Cameron's pretrial statements that there was no agreement to an IME, contradicts his Affidavit of Nov. 2, 2006, and contradicts Cincinnati's assertions that its conduct was based upon Plaintiff's not agreeing to an IME.

5. **Attorney Notes, March 29, 2005** on discussion between Mr. Hattersley, Mr. Cameron, Mr. McIntosh, and Mr. Smith; *Exhibit E, p. 1.*

    Consistent with the District Court's Scheduling Order, these four attorneys note that the

3

local rules require a stipulation for IME to be in writing. No such document exists.

There was never an agreement –as Mr. Cameron repeatedly acknowledged in his pretrial reports to Cincinnati – *and* there was never a stipulation in writing as the Rules required. The four attorneys' conference and notes further contradict Cincinnati's assertions that its conduct was justified by Plaintiff's not agreeing to an IME.

We provide that detailed description of documents because it makes clear the necessity for full production of all documents, including especially the Gough documents, and all documents showing Cincinnati's claim against Gough. All such evidence goes directly to the validity of Cincinnati's defenses. In particular, it goes to the bias, credibility, and possible reasons Mr. Cameron had for submitting his Affidavit, which is contrary to all of the other evidence in the case showing that an IME had nothing to do with Cincinnati's decision making. Plaintiff is entitled to full production given Cincinnati's advice of counsel defense and its assertion that its conduct was justified by Plaintiff's not agreeing to an IME.

### III. Specific Discovery at Issue

Cincinnati's responses and production of documents are insufficient, as follows:

RFP 52.  If you assert advice of counsel, produce the complete file of the law firm of Gough, Shanahan and any other attorney or counsel upon whom you relied in connection with Lisa Pumphrey's bodily injury claim.

RESPONSE:  At the present time, defendants are not asserting advice of counsel.

RFP 66.  All documents and writings referring to or showing your concern, criticism, reprimand, or disapproval of any conduct on the part of your legal counsel regarding the investigation, adjustment, handling, evaluation, settlement, litigation, or trial of the Pumphrey case.

RESPONSE:  Objection. Defendants object to the phrase "your legal counsel." Defendants did not have retained counsel for the lawsuit Pumphrey v. Empire Lath & Plaster and Rick Lee Pagitt. Cincinnati Insurance Company retained the law firm of Gough, Shanahan, Johnson & Waterman to defend its insureds, Empire Lath & Plaster and Rick Pagitt. The law firm of Gough, Shanahan, Johnson & Waterman were solely representing Empire Lath & Plaster and

4

>> Rick Pagitt in the lawsuit <u>Pumphrey v. Empire Lath & Plaster and Rick Lee Pagitt.</u> This request for production is overly board [sic] in that it seeks documents and materials protected from disclosure by the attorney-client and/or work product privilege.

The claims files are the only documents defendants have in their possession and/or control that would be responsive to this request. All non-privileged documents contained within the claims files are being produced in response to Request for Production No. 1.

> <u>RFP 6</u>.   All documents, evidence and writings which refer to or show your policies, rules or guidelines on advance payment of medical expenses in Montana.
>
> <u>RESPONSE</u>:  Objection. This request for production is overly board [sic] in that it seeks documents and materials protected from disclosure by the attorney-client and/or work product privilege.

The claims files are the only documents defendants have in their possession and/or control that would be responsive to this request. All non-privileged documents contained within the claims files are being produced in response to Request for Production No. 1.

*Exhibit G; Cincinnati Responses to Request for Production.*

**IV.   Cincinnati must produce the Gough File in its entirety**

    1.   <u>Legal Standards</u>

With regard to privilege, Rule 26(b)(5), F.R.Civ.P., mandates:

> (5) *Claims of Privilege or Protection of Trial Preparation Materials.* When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

*See also: Simonsen v. Allstate et al,* 154 M.F.R. 31 (D. Mont. 2003).

Asserting advice of counsel as a defense in a bad faith case, results in waiver of attorney client privilege. *Dion v. Nationwide Mut. Ins. Co.,* 185 F.R.D. 288 (D. Mont. 1998).

Cincinnati has not moved for protection from Plaintiff's requests for production, under Rule 26(c), F.R.Civ.P. Having responded to Plaintiff's discovery, Cincinnati has waived its right to so

5

move. *Three Creeks Ranch v. Rodewald et al,* 31 M.F.R. 363 (D. Mont. 2003).

As for relevance, "In the context of discovery, relevance is broadly construed. If the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement, it is relevant to the subject matter involved in the pending action." *Brown v. Lombard Canada,* 26 M.F.R. 220, 221-222 (D. Mont. 2000).

    2.    <u>Argument</u>

Plaintiff's RFP 52 was served in March, 2005. Upon asserting advice of counsel in December, 2006, Cincinnati was under an immediate obligation to supplement its responses and produce all law firm files in their entirety, since its defense resulted in complete waiver of privilege. *Dion, supra.* Cincinnati had already promised: "Defendants anticipate that they will be amending their answer later this week to assert advice of counsel as a defense. If defendants assert an advice of counsel defense, additional documents will be produced." *Cincinnati Response Brief, Dec.12, 2006; Docket #65; page 3.*

That promise followed multiple declarations by Cincinnati that it had produced everything: "Defendants have produced what they believe to be all non-privileged documents responsive to Plaintiff's First Requests for Production." *Cincinnati Answer Brief on Plaintiff's First Motion in Limine, p. 3; emphasis supplied.*

In February, 2007, for the first time, Cincinnati produced Gough File documents. They were included in over 7500 pages in the Boone Karlberg file, which consisted of the underlying case file from Gough together with the entire appeal file from Boone. No privilege log accompanied Cincinnati's production. Even if privilege had not already been waived pursuant to *Dion* and Cincinnati's express assertion of advice of counsel as a defense, Cincinnati's failure to serve a

privilege log when it produced with the Gough documents, waived privilege pursuant to Rule 26(b)(5), F.R.Civ.P.

In March, 2007, Cincinnati produced additional documents from the Gough File, but refused to make full production. Cincinnati withheld documents and served a "supplemental" privilege log (*Exh. I*) asserting attorney client privilege– which it had already waived long before.

<u>On its face</u>, Cincinnati's "supplemental" privilege log is without merit. All the withheld documents were written by Gough Shanahan counsel Hattersley or Cameron and fully discoverable on the issue of Cincinnati's advice of counsel defense, at an absolute minimum.

Further, given Cincinnati's assertion that its conduct was justified by Plaintiff's not agreeing with defense counsel at the Gough Firm that Plaintiff would undergo an IME, and Cincinnati's presenting the Affidavit of Gough attorney Cameron as the sole piece of evidence supporting that assertion, the withheld documents are easily within the broad scope of Rule 26, F.R.Civ.P. Plaintiff is entitled to full production and full exploration of Mr. Cameron's bias and credibility, and the contents and circumstances of his Affidavit, not partial production determined by Cincinnati.

As noted above, his Nov. 2, 2006 Affidavit contradicts his prior conduct in the District Court, the independent determinations that there was no agreement and no just cause to modify the scheduling order (District Court, Supreme Court findings), Cincinnati's Rule 30(b)(6) testimony and admissions, and documents including key Cincinnati and Gough reports itemized above.

In any event, "[t]he party claiming the privilege has the burden of proving its application." *Brown, supra; at 231*. Cincinnati must make that showing in the context of having completely waived privilege as a result of its advice of counsel defense, a burden it cannot meet.

The supplemental log (*Exh. I*) shows that the first three "privileged" items were written on

7

March 23-24, 2005, while Gough was still counsel of record in the underlying case of *Pumphrey v. Empire Lath & Plaster et al.* The Boone Firm was not substituted until March 29, 2005. (*See, Exhibit J*). Cincinnati cannot simultaneously defend on advice of counsel, and withhold from production that counsel's files and documents. No privilege applies and full production is required.

The fourth item gives no date other than "sometime after the verdict was reached" but was written by Mr. Cameron. Cincinnati provides no further information. Its relevance objection must be overruled. Documents authored by defense counsel pertaining to the underlying suit or the Gough Firm's actions and considerations, are within the scope of Rule 26, F.R.Civ.P. and production is required. *Brown, supra.*

Cincinnati must immediately produce all documents responsive to RFP 52: the Gough File in its entirety, and particularly those documents withheld pursuant to Cincinnati's "supplemental" privilege log.

**V.     Cincinnati must produce all documents pertaining to its claim against Gough**

Plaintiff's RFP 66 was served in March, 2005. Cincinnati's general claim of privilege is insufficient pursuant to Rule 26(b)(5), F.R.Civ.P. At no time has Cincinnati identified <u>any</u> documents pertaining to its claim against Gough, on a privilege log as the Rules require; privilege has been waived. (*See, Exhibits H, I*)

On March 28, 2007, during our meet and confer discussion, Mr. McIntosh on behalf of Cincinnati admitted that Cincinnati has made a claim against Gough. *See also,* Exhibit 26 to Cincinnati's Rule 30(b)(6) deposition ("Reviewed w/ Jim Benoski [Cincinnati CEO]. Is an E & O claim a viable option?") (*Exhibit 26 attached*). Mr. McIntosh asserted that documents showing Cincinnati's claim are not relevant, noting he had not yet investigated whether privilege may apply.

8

In short, these documents exist, are relevant, and any alleged privilege has been waived. *See, Dion, Brown, supra.* Relevance is broadly construed. Mr. Cameron's bias and credibility and the circumstances in which his Affidavit was obtained, and what is motivating him to testify when no documents support what his Affidavit states about an agreement to an IME, are all clearly relevant and discoverable pursuant to the broad scope of Rule 26, F.R.Civ.P. This is particularly true given the direct contradictions already discovered in Cincinnati documents, as set forth in Sec. II, above.

Cincinnati's immediate production of all documents responsive to RFP 66, is required.

**VI.   Cincinnati must make full production of its documents pertaining to advance pay of medical expenses in Montana**

Again, two years ago Plaintiff requested all documents "which refer to or show your policies, rules or guidelines on advance payment of medical expenses in Montana." (RFP 6, served March, 2005). Defendant responded that it was unaware of responsive documents (June, 2006). In our meet and confer on March 28, 2007, Defense counsel stated such documents are "not responsive" to any specific request, not relevant, and may be privileged. They were not identified on any privilege log.

However, on Jan. 16, 2007, Cincinnati's Rule 30(b)(6) designee testified that "literature would be passed out" as part of educational programs to inform its adjusters of the statutory requirements for particular states. (*Exh. F, p. 36*) He went on to testify that "[t]here was no name for it [the literature], it was just information pertaining to the laws of that state." (*Exh. F, p. 37*) He testified:

> Q:   You're working in Montana now?
> A:   Montana is one of the states that I do handle.

| | | |
|---|---|---|
| Q: | Do you still have those materials that show what the requirements were for Montana? | |
| A: | I probably still have them. | |
| Q: | Where would they be? | |
| A: | In my desk... .. Probably in a file marked Montana. | |

\*   \*   \*
Q:     ... is that information readily available?
A:     What do you mean by "readily available?"

Q:     It's just right next door in your office in a file called Montana, correct?
A:     That is correct.

*Exhibit F, p. 38.*

Any fair reading of RFP 6, would result in Cincinnati's "Montana" file being responsive and discoverable. Such documents clearly enable Cincinnati to respond to injuries in Montana. At an absolute minimum they <u>should</u> be part of Cincinnati's calculus, and the fact they were in its adjuster's desk while he supervised the company's response to Lisa Pumphrey's claim, confirms their relevance.

Cincinnati is not entitled to parse and interpret Plaintiff's request so narrowly as to exclude documents and evidence that by reason and common sense are responsive. *See, Richardson v. State,* 2006 MT 43, ¶52. Rather, Cincinnati must honor its broad duty of disclosure. The "Montana" and all similar files must be produced in full.

**VII.   Conclusion**

For the foregoing reasons, Plaintiff request the Court's Order compelling Cincinnati's full, complete, and immediate production of documents responsive to RFP 6, 52, and 66 as set forth above.

RESPECTFULLY submitted: April 2, 2007.

                                              ELIZABETH A. HALVERSON, P.C.

                                              By:    /s/ Elizabeth Halverson
                                                      Elizabeth Halverson
                                                        ELIZABETH A. HALVERSON, P.C.
                                                        Attorneys for Lisa Pumphrey

**Attachments:**

Exhibit A:    Mr. Cameron's Sept. 24, 2004 Interim Status Report to Cincinnati.

Exhibit B:    Mr. Cameron's Nov. 2, 2004 Confidential Mediation Memorandum

Exhibit C:    Cincinnati's internal Trial Report, Dec. 27, 2004

Exhibit D:    Mr. Cameron's Post-Trial Report to Cincinnati, Jan. 11, 2005

Exhibit E:    Attorney Notes, March 29, 2005 on discussion between Mr. Hattersley, Mr. Cameron, Mr. McIntosh, and Mr. Smith.

Exhibit F:    Deposition Excerpts; Cincinnati Rule 30(b)(6) Designee.

Exhibit G:    Cincinnati's Responses to Plaintiff's First Requests for Production

Exhibit H:    Cincinnati's Privilege Log

Exhibit I:    Cincinnati's Supplemental Privilege Log

Exhibit J:    Notice of Substitution of Counsel, March 29, 2005

Exhibit 26 to Cincinnati Rule 30(b)(6) deposition.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2007 a copy of the foregoing was served upon the following persons by the following means:

| | |
|---|---|
| 1,2,3 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |

1. Clerk, U.S. District Court

2. Ian McIntosh, Len Smith
   Crowley Law Firm
   490 North 31st Street, Suite 500
   P.O. Box 2529
   Billings , MT 59103-2529

3. James R. Halverson
   HALVERSON & GILBERT, P.C.
   Suite 301, 1001 S. 24th Street West
   P.O. Box 80470
   Billings, MT 59108-1011

            ELIZABETH A. HALVERSON, P.C.

            By: /s/ Elizabeth Halverson
               Elizabeth Halverson
               ELIZABETH A. HALVERSON, P.C.
               Attorneys for Lisa Pumphrey