Leonard H. Smith
Ian McIntosh
Crowley, Haughey, Hanson,
   Toole & Dietrich P.L.L.P.
500 Transwestern Plaza II
490 North 31st Street
P. O. Box 2529
Billings, MT  59103-2529
Telephone:  (406) 252-3441
Facsimile:  (406) 256-8526
lsmith@crowleylaw.com
imcintosh@crowleylaw.com

Attorneys for the Defendants


IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MONTANA

BILLINGS DIVISION


| | | |
|---|---|---|
| LISA PUMPHREY, | ) | Cause No.: CV-05-14-BLG-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S MOTION TO** |
| vs. | ) | **COMPEL** |
| | ) | |
| CINCINNATI INSURANCE COMPANY, a | ) | |
| foreign corporation, and MICHAEL | ) | |
| DELANEY, individually, | ) | |
| | ) | |
| Defendants. | ) | |


Defendant Cincinnati Insurance Company hereby requests that the Court issue an order

compelling the Plaintiff to fully and completely respond to the discovery requests listed below,

in full, pursuant to L.R. 26.3(c).  Pursuant to L.R. 26.3(c)(2) counsel exchanged detailed,

comprehensive correspondence regarding the discovery at issue in this motion.  Plaintiff opposes

this motion.  Cincinnati Insurance requests an order requiring the Plaintiff fully and completely

respond to following discovery requests within ten (10) business days:

**REQUEST FOR PRODUCTION NO. 1:**  Please produce all documents, information, correspondence, and written reports or opinions received from, or provided to, any expert witness which you may call at trial or disclose as an expert in this case.

**RESPONSE:**  Objection; responsive materials are protected work product. Further, the Court's Scheduling Order does not yet require disclosure of this information.

**REQUEST FOR PRODUCTION NO. 2:**  Please produce copies of all exhibits which you intend to offer in evidence or otherwise rely upon in this case.  If such documents have been previously produced in this litigation, please identify them by bates number.

**RESPONSE:**  Objection; responsive materials are protected work product. Further, the Court's Scheduling Order does not yet require disclosure of this information.

**INTERROGATORY NO. 1:**  State the name and address of each person who knows of any relevant facts, or who has in his;/her care, custody and/or control, documentary evidence which supports or tends to support your contentions in this case.  In addition, please provide a summary of each person's knowledge and/or identify all supporting documents.

**ANSWER:**  Persons with knowledge include all persons, representatives, and agents of Cincinnati Insurance Company who were involved in any aspect of investigating, handling, adjusting, supervising, evaluating, or negotiating Lisa Pumphrey's claim.  Not all of these individuals are known to us at this point. They include, but are not limited to: Mike Delaney, Tim Fitz, Woody Fowler, Angie Delaney, Lisa Love, Mark Huller, Norm Kirkpatrick, Marty Mullen, Jim Benoski, Bruce Fisher, Robert Dewey, Mark Fulk, Phil Van Houten, Allen Matheny, Scott Babb, and undoubtedly others.  They are also believed to have documentary evidence relevant to claims and defenses in this case.  Sean and Lisa Pumphrey have knowledge of facts.

**INTERROGATORY NO. 2:**  Please state the amount of any damages claimed in this action and describe, in detail, how you computed such damages.

**ANSWER:**  Plaintiff is seeking special, general, and punitive damages to be determined by the jury based upon evidence presented at trial in accordance with applicable law and in light of Cincinnati's breach of duties under Montana law to investigate claims based upon all available facts, to effectuate prompt fair, settlement and to advance pay medical expenses when liability is reasonably

clear.  Cincinnati's breaches include that it did not investigate all available facts, did not effectuate prompt fair settlement and did not pay Lisa Pumphrey's medical expenses until the eve of trial, with no explanation of what had changed from Cincinnati's prior refusals to pay, over many months.  Cincinnati had evidence of Plaintiff's injuries, damages, and permanent disability, to which its insured stipulated at trial, and still did not make any offer commensurate with the uncontroverted special damages or with the verdict, despite the fact that the trial court summarily rejected the insured's argument on insufficiency of evidence to support the verdict, and Cincinnati-retained defense counsel on appeal abandoned that argument.

These and many other facts in connection with Cincinnati's misconduct, including those set forth in response to Interrogatories 6 and 11, below, which we incorporate by this reference, will be factored in by the jury to arrive at a just amount of damages to deter and punish Cincinnati and to compensate Lisa Pumphrey.

**REQUEST FOR PRODUCTION NO. 4:**  Please produce all documents supporting your answer to the previous interrogatory.

**RESPONSE:**  Responsive documents include but are not limited to Cincinnati's financial condition documents and all documents, writings, and evidence, pursuant to EOTT and Montana law, showing the facts and information available to Cincinnati at the time it made decisions on Lisa Pumphrey's claim, including but not limited to the Claim File and all related evidence including medical records, reports, bills, doctor's depositions, affidavits, Plaintiff's medical authorization; the pleadings, discovery, expert disclosures, exhibits to which Cincinnati's insured stipulated in their entirety.  Such documents are in Cincinnati's possession and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  We also identify the following responsive documents: the Boone file, the Gough file, and the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced.

**REQUEST FOR PRODUCTION NO. 5:**  Please produce your state and federal income tax returns, including 1099's and W-2 Forms and all Schedules, for the years 1998 through the present, inclusive.

**RESPONSE:**  Objection; not relevant nor reasonably calculated to lead to the discovery of any admissible evidence.  Plaintiff is not making a wage or economic loss claim in this case but is claiming all special, general, and punitive damages against Cincinnati and Defendants as allowed by applicable law and in accordance with evidence to be presented at trial.

**INTERROGATORY NO. 3:**  Please state the name and address of each of your employers and the inclusive dates of each such employment, your rate of pay or

compensation, a description of your duties, your reason for leaving such employment, and the names of your immediate supervisors from 1998 to the present.

**ANSWER:**  Objection; not relevant nor reasonably calculated to lead to discovery of admissible evidence.  Plaintiff is not making a wage loss or economic loss claim in this case.  As Cincinnati is aware from having possession of and access to Lisa Pumphrey's medical records, and the uncontroverted proof in her doctors reports and depositions, her injuries from the car wreck in June, 2001, have prevented her from working since then.  She described her activities including school and work prior to that date, in response to questions during her deposition on November 3, 2004.

**REQUEST FOR PRODUCTION NO. 7:**  Please produce a copy of any and all documents in your possession that Cincinnati Insurance Company generated or provided to you before the filing of this lawsuit that relate in any way to the incident(s) giving rise to this lawsuit.

**RESPONSE:**  Responsive documents are those claim file documents already produced to Plaintiff by Cincinnati, and therefore they need not be reproduced.  We incorporate by this reference Cincinnati's response to Plaintiff's RFP 1.

**INTERROGATORY NO. 6:**  If you are seeking punitive damages, please set forth each and every alleged act or omission which you contend gives rise to an award of punitive damages in this litigation.  For each such act, please identify all persons whom you believe have knowledge regarding the act or omission and identify all facts and documents which you contend support your claim for punitive damages.

**ANSWER:**  Objection; overbroad.  Cincinnati has produced no documents, writings, or evidence showing its activities and decisions after January, 2004 and on the controlling issues of why Cincinnati failed to advance pay of Lisa Pumphrey's medical expenses until the eve of trial; why Cincinnati now claims it was adversely affected by not getting an IME when the District Court and Supreme Court found that there was no justification in the underlying proceeding, for the late request; why Cincinnati failed to make an offer commensurate with Lisa Pumphrey's uncontroverted special damages of $3.1 million; and why Cincinnati failed to make an offer commensurate with the verdict.

Plaintiff cannot determine with specificity or completeness, all acts and omissions under the circumstances.  What is known so far is: Cincinnati knew liability was clear from day one.  Its insured admitted he was traveling about 35 MPH and barely braked.  He was reaching for his cigarette lighter and crashed into Lisa's vehicle, which was at a full stop waiting to turn left.  The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiancée Sean Pumphrey.  Lisa was turned to the right when the double impact occurred.  All three vehicles were totaled in the crash, a fact stipulated to at trial, by

Cincinnati's insured.  Cincinnati's insured was cited, and Lisa was not at fault in any way – also a fact stipulated to at trial by Cincinnati's insured.

The sole issue was damages.  Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness.  Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used.  Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that he complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While X-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries.  She had unrelenting and consistent pain, difficulties, and restrictions since the wreck; a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties, and restrictions since the car wreck were all a result of her injuries.

At those depositions, Cincinnati's insured also stipulated to Exhibit 43, showing Lisa's medical expenses in excess of $47,000.  Cincinnati's insured offered no evidence, ever, to controvert any medical or other evidence establishing Lisa's special damages, disclosed in early October, 2004, and ultimately stipulated to trial Exhibit 53 showing Lisa's special damages in excess of $3.1 million; and stipulated to virtually all other evidence at trial.  Cincinnati's insured offered no explanation for violating the scheduling order; offered no proof of what a potential defense expert might say.

Cincinnati knew liability was clear and that Lisa's treating specialist physicians were consistently and repeatedly reporting she was precluded from returning to law school or pursuing her career.  Cincinnati knew that Lisa's special damages were uncontroverted and exceeded $3.1 million.

Despite such knowledge, Cincinnati disregarded its duties under Montana law to investigate all available facts and respond to them to fairly, promptly effectuate settlement.  Instead, Cincinnati refused to advance pay Lisa's medical expenses until the eve of trial, when it tendered the medical expense without explanation of what, if anything, had changed from the many months prior when it refused to pay.  Further, Cincinnati made a single offer of $50,000 at the settlement conference in November, 2004, and made no offer at any time that was commensurate with Plaintiff's uncontroverted special damages of $3.1 million, let alone an offer commensurate with the verdict.  Cincinnati's insured's argument

that the evidence was insufficient to support the verdict, was summarily rejected by the trial judge and abandoned by Cincinnati's insured on appeal. Cincinnati's other insured's arguments post trial were summarily rejected by the trial court as well. Such misconduct rises to the level to warrant the jury's imposition of punitive damages to punish Cincinnati and to deter it and others from such misconduct in the future.

Persons with knowledge include all persons, representatives, and agents of Cincinnati Insurance Company who were involved in any aspect of investigating, handling, adjusting, supervising, evaluating, or negotiating Lisa Pumphrey's claim. Not all of these individuals are known to us at this point. They include but are not limited to: Mike Delaney, Tim Fitz, Woody Fowler, Angie Delaney, Lisa Love, Mark Huller, Norm Kirkpatrick, Marty Mullen, Jim Benoski, Bruce Fisher, Robert Dewey, Mark Fulk, Phil Van Houten, Allen Matheny, Scott Babb, and undoubtedly others. They are also believed to have documentary evidence relevant to the claims and defenses in this case. Lisa and Sean Pumphrey have knowledge of facts.

Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**. Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access to in the underlying suit, including but not limited to all medical records, reports, and bills; all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

**SUPPLEMENTAL RESPONSE March 28, 2007:** We also identify the following responsive documents: the Boone file, the Gough file, and the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz testimony included various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted as important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information was in Cincinnati's file and was simply disregarded by Cincinnati.

        Further, Cincinnati's Fitz acknowledged the Company's continuing obligation to investigate and respond to the facts and evidence; and admitted that the company's own guidelines require much the same prompt, fair, reasonable investigation and response to injuries as Montana law requires. Cincinnati did not review or respond to extensive medical and damage information despite knowing the entire case was about damages only. Cincinnati has thus conceded it did not act reasonably. These and other facts will be presented to the jury in support of Plaintiff's punitive damage claim.

**REQUEST FOR PRODUCTION NO. 8:** Please produce all documents supporting your response to the previous discovery request. If you believe that

documents already produced in this litigation support your previous discovery request, please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff.** Additional responsive documents include all other documents, writings and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills; all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  In addition to the foregoing response, we identify as responsive the Boone file and Gough file documents, and the Fitz deposition with exhibits. All such documents are in Cincinnati's possession already and need not be reproduced.

**INTERROGATORY NO. 7:**  Please set forth each violation of Montana Code Ann. § 33-18-201 that you allege and for each alleged violation, please set forth the subsection that you contend is violated, the facts supporting that contention, identify all persons with knowledge supporting that contention and identify all documents which you believe support that contention.

**ANSWER:**  Objection; overbroad.  Cincinnati has produced no documents, writings or evidence showing its activities and decisions after January, 2004 and on the key issues of why Cincinnati failed to advance pay of Lisa Pumphrey's medical expenses until the eve of trial; why Cincinnati now claims it was adversely affected by not getting an IME when the District Court and Supreme Court found there was no justification in the underlying proceeding for the late request; why Cincinnati failed to make an offer commensurate with Lisa Pumphrey's uncontroverted special damages of $3.1 million; and why Cincinnati failed to make an offer commensurate with the verdict.

The general facts known so far are set forth in Plaintiff's answer to Interrogatory 6, above, incorporated by this reference.  Such facts show Cincinnati's misconduct in violation of 33-18-201(4) and (6), and its obligations under *Ridley*.

Persons with knowledge include all persons, representatives, and agents of Cincinnati Insurance Company who were involved in any aspect of investigating, handling, adjusting, supervising, evaluating, or negotiating Lisa Pumphrey's claim.  Not all of these individuals are known to us at this point.  They include but are not limited to: Mike Delaney, Tim Fitz, Woody Fowler, Angie Delaney, Lisa Love, Mark Huller, Norm Kirkpatrick, Marty Mullen, Jim Benoski, Bruce Fisher, Robert Dewey, Mark Fulk, Phil Van Houten, Allen Matheny, Scott Babb, and undoubtedly others.  They are also believed to have documentary evidence

relevant to the claims and defenses in this case.  Lisa and Sean Pumphrey have knowledge of facts.

Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access to in the underlying suit, including but not limited to all medical records, reports, and bills; all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**REQUEST FOR PRODUCTION NO. 9:**  Please produce all documents identified in the preceding interrogatory, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**INTERROGATORY NO. 8:**  Do you contend that any agents or employees of Cincinnati Insurance Company failed to follow any internal guidelines, practices, procedures, manuals or standards in the handling of your claim?  If so, please set forth the guideline, practice, manual or standard which you contend was violated, or the facts which support your contention, identify all witnesses who have knowledge regarding this contention and identify all documents which you contend support this contention.

**ANSWER:**  Objection; work product.  Further, the request calls for expert opinion which is not due under the terms of the Scheduling Order.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  Since the foregoing response, Cincinnati designee Fitz testified in January, 2007. He acknowledged the Company's continuing obligation to investigate and respond to the facts and evidence, and admitted that Cincinnati's internal guidelines require prompt, fair, reasonable investigation and response to this claim. Mr. Fitz admitted he (on behalf of Cincinnati) did not review or respond to various facts during Lisa's claim including but not limited to her doctors' reports, affidavit, depositions, and expert disclosures showing permanent, disabling injury and damage. He testified that Cincinnati's decision making on the claim was based on medical information

from 2001 and disregarded medical and other information after that, including the statement of the Plaintiff herself describing profound changes to her life as a result of her injuries from the wreck. The witnesses with knowledge are Mr. Fitz and his chain of command at Cincinnati.

**REQUEST FOR PRODUCTION NO. 10:**  Please produce any and all documents identified in the preceding interrogatory, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Not applicable.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  Responsive documents are the deposition and exhibits thereto of Cincinnati designee Fitz. Such documents are already in Defendants' possession and need not be reproduced.

**INTERROGATORY NO. 9:**  Do you contend that any agents or employees of Cincinnati Insurance Company failed to follow any industry guidelines, practices, manuals or standards (other than Mont. Code Ann. §§ 33-181-201 and 242) in the handling of your claim?  If so, please set forth the guideline, practice, policy, manual or standard of which was violated, the facts which support your contention, and identify all witnesses who have knowledge regarding this contention and identify all documents which you contend support that contention.

**ANSWER:**  Objection; work product.  Further, the request calls for expert opinion which is not due under the terms of the Scheduling Order.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  Based upon Mr. Fitz' testimony, and assuming that Cincinnati's internal guidelines and obligations as identified by Cincinnati designee Fitz are representative of industry-wide guidelines and obligations, then we do contend Cincinnati failed to follow industry guidelines. Mr. Fitz identified Cincinnati guidelines for prompt, fair, reasonable investigation and response to claims, which did not occur in this case. Witnesses with knowledge would include Mr. Fitz and persons in his chain of command and reporting.

**REQUEST FOR PRODUCTION NO. 11:**  Please produce all documents identified in the preceding interrogatory, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Not applicable.

**SUPPLEMENTAL REPSONSE March 28, 2007:**  The responsive documents are the deposition of Mr. Fitz with exhibits, which are already in Cincinnati's possession and need not be reproduced.

**INTERROGATORY NO. 11:** If you contend that Defendants did not have a reasonable basis in law/in fact for any act at issue in this case, please state, in detail, the facts supporting your allegation.

**ANSWER:**  Yes, Plaintiff is contending that Defendants did not have a reasonable basis in law and/or fact. Cincinnati has produced no evidence to show its allegedly "reasonable basis," since it has produced nothing showing its activities and decisions after January 2004, or on the controlling issues of why Cincinnati failed to advance pay of Lisa Pumphrey's medical expenses until the eve of trial; why Cincinnati now claims it was adversely affected by not getting an IME when the District Court and Supreme Court found there was no justification in the underlying proceeding, for the late request; why Cincinnati  failed to make an offer commensurate with Lisa Pumphrey's uncontroverted special damages of $3.1 million; and why Cincinnati failed to make an offer commensurate with the verdict.

Pursuant to *EOT T* and Montana law, Cincinnati's allegedly "reasonable basis" must be supported by evidence from its claim file at the time demands were made, showing how it met its obligation to investigate all available facts; its obligations under *Ridley*; and its obligation to effectuate prompt fair settlement. Cincinnati has not produced evidence on these controlling issues.

Cincinnati has not produced evidence explaining its activities, responses, and decisions as required by Montana law, in connection with the following facts:

Cincinnati knew liability was clear from day one. Its insured admitted he was traveling about 35 MPH and barely braked. He was reaching for his cigarette lighter and crashed into Lisa's vehicle, which was at a complete stop waiting to turn left. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured. Cincinnati's insured was cited, and Lisa was not at fault in any way—also a fact stipulated to at trial by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witnesses. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries and connected them to the car wreck and her unrelenting and consistent pain, difficulties, and restrictions since the wreck: a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties, and restrictions since the car wreck were all a result of her injuries.

At those depositions, Cincinnati's insured also stipulated to Exhibit 43, showing Lisa's medical expenses in excess of $47,000. Cincinnati's insured offered no evidence, ever, to controvert any medical or other evidence establishing Lisa's special damages, disclosed in early October, 2004, and ultimately stipulated to trial Exhibit 53 showing Lisa's special damages in excess of $3.1 million; and stipulated to virtually all other evidence at trial. Cincinnati's insured offered no explanation for violating the scheduling order; offered no proof of what a potential defense expert might say.

Cincinnati knew that Lisa's special damages were uncontroverted and exceeded $3.1 million.

Cincinnati has produced no evidence to explain or justify its refusal to advance pay Lisa's medical expenses until the eve of trial, when it tendered the medical expense without explanation of what, if anything, had changed from the many months prior to when it refused to pay; or to explain or justify why Cincinnati made a single offer of $50,000 at the settlement conference in November, 2004, and made no offer at any time that was commensurate with the Plaintiff's uncontroverted special damages of $3.1 million, let alone an offer commensurate with the verdict; or its activities, responses and decisions in light of the fact that Cincinnati's insured's argument that the evidence was insufficient to support the verdict, was summarily rejected by the trial judge and abandoned by Cincinnati-retained counsel on appeal; or in response to the fact that Cincinnati's other insured's arguments post trial were summarily rejected by the trial court as well.

Pursuant to EOTT, Cincinnati is precluded from offering evidence that is new or different from that which is in its claim file to explain its allegedly "reasonable basis" in law or fact. Yet Cincinnati has produced nothing from its claim file to provide that explanation, so its defense of "reasonable basis" fails.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  We also identify the following responsive documents: the Boone file, the Gough file, and the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz acknowledged the Company's continuing obligation to investigate and respond to the facts and evidence. He also made various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted was important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information

was in Cincinnati's file and was simply disregarded by Cincinnati.

Further, Cincinnati's Fitz conceded that the company's own guidelines require much the same prompt, fair, reasonable investigation and response to injuries, as Montana law requires. Cincinnati did not review or respond to extensive medical and damage information despite knowing the entire case was about damages only. Cincinnati has thus conceded it did not act reasonably.

**REQUEST FOR PRODUCTION NO. 13:**  Please produce any other document, photograph, drawing, memoranda, or any other item(s) not previously produced which you believe tends to support your allegations regarding liability or damages to this lawsuit.

**RESPONSE:**  Note applicable.

**REQUEST FOR PRODUCTION NO. 14:**  Please produce all documents supporting your response to the previous discovery request, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  We also identify the following responsive documents: the Boone file, the Gough file, and the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced.

We are producing the 2002, 2003, and 2004 reports of neurologist Dr. Isaacs; records of treating orthopedic surgeon Dr. Zaslav; and Exhibits 40, 41, 42, 44, and 45, which were never disputed nor controverted, were used by both physicians during their deposition trial testimony to explain how Plaintiff's injuries occurred during the force and impact in the car wreck, and how her physical injuries were consistent with the trauma of that impact. These documents are representative of the complete medial records and reports Cincinnati had, but disregarded, showing the nature and severity of Lisa's injuries and damages.

**REQUEST FOR ADMISSION NO. 1:**  Admit that on June 27, 2001, after Ms. Pumphrey's accident, Dr. Anthony Russo diagnosed Plaintiff with a "Lumbosacral strain" and nothing else.

**ANSWER:** Deny.  The record speaks for itself.  Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million.  Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**REQUEST FOR ADMISSION NO. 2:**  Admit that on June 27, 2001, after Ms. Pumphrey's accident, Dr. Joseph Harpole, based on diagnostic imaging of Plaintiff's spine, concluded that Plaintiff had a "Normal lumber spine."

**ANSWER:** Deny.  The record speaks for itself.  Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million.  Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**REQUEST FOR PRODUCTION NO. 16:**  If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**REQUEST FOR ADMISSION NO. 3:**  Admit that Ms. Pumphrey's initial medical treatment after her accident on June 27, 2001 did <u>not</u> diagnose Ms. Pumphrey with serious and permanent disabilities.

**ANSWER:**  Deny.  The record speaks for itself.  Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million.  Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  As further clarification regarding the serious and permanent nature of Plaintiff's injuries: Cincinnati knew from day one that its insured admitted he was traveling about 35 MPH and barely braked before crashing into Plaintiff's vehicle. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sot and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries. She had unrelenting and consistent pain, difficulties, and restrictions since the wreck: a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs. As early as March 2002, neurologist Dr. Isaacs reported that Lisa's injuries were caused by the wreck and were preventing her from returning to law school.

We specifically identify the records and reports of neurologist Dr. Isaacs. We also identify Plaintiff's statement of the effect of the injury on her activities and life, exhibit 27 to the Fitz deposition.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44 and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties, and restrictions since the car wreck were all a result of her injuries.

**REQUEST FOR PRODUCTION NO. 17:**  If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  We specifically identify the records and reports of neurologist Dr. Isaacs, and Lisa's statement of impact on her life (Exhibit 27 to Fitz deposition). We are producing that Statement. We are also producing the 2002, 2003, and 2004 reports of neurologist Dr. Isaacs; records of treating orthopedic surgeon Dr. Zaslav; and Exhibits 40, 41, 42, 44 and 45, which were never disputed nor controverted, were used by both physicians during their deposition trial testimony to explain how Plaintiff's injuries occurred during the force and impact in the car wreck, and how her physical injuries were consistent with the trauma of that impact. These documents are representative of the complete medical records and reports Cincinnati had, but disregarded, showing the nature and severity of Lisa's injuries and damages.

We also identify the following responsive documents**:** the Boone file, the Gough file, and the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz testimony included various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted was important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information was in Cincinnati's file and was simply disregarded by Cincinnati.

**REQUEST FOR ADMISSION NO. 5:**  Admit that on June 28, 2001, the day after Ms. Pumphrey's accident, Ms. Pumphrey was diagnosed with a "Whiplash injury" and nothing else.

**ANSWER:**  Deny.  The record speaks for itself.  Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million.  Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**SUPPLEMENTAL REPSONSE March 28, 2007:**  As further clarification regarding the serious and permanent nature of Plaintiff's injuries: Cincinnati knew from day one that its insured admitted he was traveling about 35 MPH and barely braked before crashing into Plaintiff's vehicle. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries. She had unrelenting and consistent pain, difficulties, and restrictions since the wreck: a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs. As early as March 2002, neurologist Dr. Isaacs reported that Lisa's injuries were caused by the wreck and were preventing her from returning to law school.

We specifically identify the records and reports of neurologist Dr. Isaacs. We also identify Plaintiff's statement of the effect of the injury on her activities and life, exhibit 27 to the Fitz deposition.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and

connecting them to the car wreck and confirming that Lisa's pain, difficulties, and restrictions since the car wreck were all a result of her injuries.

**REQUEST FOR PRODUCTION NO. 19:**  If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  We specifically identify the records and reports of neurologist Dr. Isaacs, and Lisa's statement of impact on her life (Exhibit 27 to Fitz deposition). We are also producing the 2002, 2003, and 2004 reports of neurologist Dr. Isaacs; records of treating orthopedic surgeon Dr. Zaslav; and Exhibits 40, 41, 42, 44 and 45, which were never disputed nor controverted, were used by both physicians during their deposition trial testimony to explain how Plaintiff's injuries occurred during the force and impact in the car wreck, and how her physical injuries were consistent with the trauma of that impact. These documents are representative of the complete medical records and reports Cincinnati had, but disregarded, showing the nature and severity of Lisa's injuries and damages.

        We also identify the following responsive documents: the Boone file, the Gough file, and the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz testimony included various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted was important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information was in Cincinnati's file and was simply disregarded by Cincinnati.

**REQUEST FOR ADMISSION NO. 6:**  Admit that Plaintiff did not seek any medical from July 3, 2001 through October, 2001.

**ANSWER:**  Deny.  Cincinnati has produced no documents, writings or evidence showing how, if at all, such information factored into its decision making on the key issues of why Cincinnati failed to advance pay of Lisa Pumphrey's medical

expenses until the eve of trial; why Cincinnati now claims it was adversely affected by not getting an IME when the District Court and Supreme Court found there was no justification in the underlying proceeding, for the late request; why Cincinnati failed to make an offer commensurate with Lisa Pumphrey's uncontroverted special damages of $3.1 million; and why Cincinnati failed to make an offer commensurate with the verdict.  Consequently, the request is irrelevant and not calculated to lead to the discovery of admissible evidence.

Plaintiff had been prescribed pain medication and physical therapy, and instructed to reduce her activities and was told that she would gradually get better over a period of weeks or months; such conservative treatment was not based upon MRI or specialist care but was based upon testing which was incapable of showing Lisa Pumphrey's traumatic injuries to her shoulder, C5-6 spine, and ribs, which were diagnosed by specialists after further specialized testing.

We incorporate by this reference, the medical facts set forth in response to Interrogatories 6 and 11, above, for additional context as known to Cincinnati during the entirety of the underlying claim and suit.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  As further clarification regarding the serious and permanent nature of Plaintiff's injuries: Cincinnati knew from day one that its insured admitted he was traveling about 35 MPH and barely braked before crashing into Plaintiff's vehicle. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries. She had unrelenting and consistent pain, difficulties, and restrictions since the wreck: a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs. As early as March 202, neurologist Dr. Isaacs reported that Lisa's injuries were caused by the wreck and were preventing her from returning to law school.

We specifically identify the records and reports of neurologist Dr. Isaacs. We also identify Plaintiff's statement of the effect of the injury on her activities

and life, exhibit 27 to the Fitz deposition.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties, and restrictions since the car wreck were all a result of her injuries.

**REQUEST FOR PRODUCTION NO. 20:**  If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**REQUEST FOR ADMISSION NO. 7:**  Admit that the diagnostic imaging of Plaintiff on December 6, 2001, conducted by Dr. Robert Naylor, found that Plaintiff had a "Normal thoracic spine" and "Normal lumbar spine with obliques."

**ANSWER:**  Deny.  The record speaks for itself.  Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million.  Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**REQUEST FOR PRODUCTION NO. 21:**  If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bastes number.

**RESPONSE:**  Responsive documents include all those produced so far to

Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:** We specifically identify the records and reports of neurologist Dr. Isaacs, and Lisa's statement of impact on her life (Exhibit 27 to Fitz deposition). We are also producing the 2002, 2003 and 2004 reports of neurologist dr. Isaacs; records of treating orthopedic surgeon Dr. Zaslav; and Exhibits 40, 41, 42, 44 and 45, which were never disputed nor controverted, were used by both physicians during their deposition trial testimony to explain how Plaintiff's injuries occurred during the force and impact in the car wreck, and how her physical injuries were consistent with the trauma of that impact. These documents are representative of the complete medical records and reports Cincinnati had, but disregarded, showing the nature and severity of Lisa's injuries and damages.

We are also producing the reports of Plaintiff's vocational and rehab expert Dr. Gracey, the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz testimony included various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted was important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information was in Cincinnati's file and was simply disregarded by Cincinnati.

**REQUEST FOR ADMISSION NO. 8:**  Admit that Plaintiff's medical record of the treatment Plaintiff received on December 14, 2001 states that "This patient's history and exam were most consistent with aggravation of left upper back muscle strain and spasm due to positioning assumed as she works many hours on a computer."

**ANSWER:**  Deny.  The record speaks for itself.  Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million.  Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**SUPPLEMENTAL RESPONSE March 28, 2007:** As further clarification regarding the serious and permanent nature of Plaintiff's injuries: Cincinnati knew from day one that its insured admitted he was traveling about 35 MPH and barely braked before crashing into Plaintiff's vehicle. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries. She had unrelenting and consistent pain, difficulties, and restrictions since the wreck; a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs. As early as March 2002, neurologist Dr. Isaacs reported that Lisa's injuries were caused by the wreck and were preventing her from returning to law school.

We specifically identify the records and reports of neurologist Dr. Isaacs. We also identify Plaintiff's statement of the effect of the injury on her activities and life, exhibit 27 to the Fitz deposition.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties and restrictions since the car wreck were all a result of her injuries.

**REQUEST FOR PRODUCTION NO. 22:** If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:** Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati**

**did not bates number documents produced to Plaintiff.** Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures, depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:** We specifically identify the records and reports of neurologist Dr. Isaacs, and Lisa's statement of impact on her life (Exhibit 27 to Fitz deposition). We are also producing the 2002, 2003 and 2004 reports of neurologist dr. Isaacs; records of treating orthopedic surgeon Dr. Zaslav; and Exhibits 40, 41, 42, 44 and 45, which were never disputed nor controverted, were used by both physicians during their deposition trial testimony to explain how Plaintiff's injuries occurred during the force and impact in the car wreck, and how her physical injuries were consistent with the trauma of that impact. These documents are representative of the complete medical records and reports Cincinnati had, but disregarded, showing the nature and severity of Lisa's injuries and damages.

We are also producing the reports of Plaintiff's vocational and rehab expert Dr. Gracey, the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz testimony included various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted was important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information was in Cincinnati's file and was simply disregarded by Cincinnati.

**REQUEST FOR ADMISSION NO. 9:** Admit that none of Plaintiff's medicals from the year 2001 indicate or diagnose a serious and permanent injury.

**ANSWER:** Deny. The record speaks for itself. Objection; not relevant nor reasonably calculated to lead to the discovery of admissible evidence, since Cincinnati has produced no evidence showing that it considered any particular medical record to the exclusion of the complete medical record showing Lisa Pumphrey's permanent and disabling injuries from the wreck, which caused the jury to render its verdict for $3.9 million. Such verdict was affirmed on appeal after Cincinnati-retained counsel's argument regarding insufficiency of evidence was summarily rejected by the trial court and abandoned by Cincinnati-retained counsel on appeal.

The general medical facts and evidence known to Cincinnati are outlined in Plaintiff's answers to Interrogatories 6 and 11, which are incorporated by this reference.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  As further clarification regarding the serious and permanent nature of Plaintiff's injuries: Cincinnati knew from day one that its insured admitted he was traveling about 35 MPH and barely braked before crashing into Plaintiff's vehicle. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries. She had unrelenting and consistent pain, difficulties, and restrictions since the wreck; a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs. As early as March 2002, neurologist Dr. Isaacs reported that Lisa's injuries were caused by the wreck and were preventing her from returning to law school.

We specifically identify the records and reports of neurologist Dr. Isaacs. We also identify Plaintiff's statement of the effect of the injury on her activities and life, exhibit 27 to the Fitz deposition.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties and restrictions since the car wreck were all a result of her injuries.

**REQUEST FOR PRODUCTION NO. 23:**  If you deny the preceding discovery request please produce all documents supporting your denial, or if such documents have been previously produced please identify the documents by bates number.

**RESPONSE:**  Responsive documents include all those produced so far to Plaintiff by Cincinnati in response to Plaintiff's discovery requests; **Cincinnati did not bates number documents produced to Plaintiff**.  Additional responsive documents include all other documents, writings, and evidence to which Cincinnati had access in the underlying suit, including but not limited to all medical records, reports, and bills all pleadings, discovery, expert disclosures,

depositions, exhibits and evidence.

Cincinnati is in possession of all such documents and evidence now and so they need not be reproduced.

**SUPPLEMENTAL RESPONSE March 28, 2007:**  We specifically identify the records and reports of neurologist Dr. Isaacs, and Lisa's statement of impact on her life (Exhibit 27 to Fitz deposition). We are also producing the 2002, 2003 and 2004 reports of neurologist dr. Isaacs; records of treating orthopedic surgeon Dr. Zaslav; and Exhibits 40, 41, 42, 44 and 45, which were never disputed nor controverted, were used by both physicians during their deposition trial testimony to explain how Plaintiff's injuries occurred during the force and impact in the car wreck, and how her physical injuries were consistent with the trauma of that impact. These documents are representative of the complete medical records and reports Cincinnati had, but disregarded, showing the nature and severity of Lisa's injuries and damages.

We are also producing the reports of Plaintiff's vocational and rehab expert Dr. Gracey, the deposition with exhibits of Cincinnati designee Tim Fitz. Such documents are already in Cincinnati's possession and will not be reproduced. Mr. Fitz testimony included various admissions that he, on behalf of Cincinnati, disregarded extensive facts, medical records, reports, depositions, expert disclosures, Plaintiff's statement of the impact of her injuries on her life and activities, and various other information which he admitted was important to Cincinnati's fair and reasonable response to Lisa's injuries. All such information was in Cincinnati's file and was simply disregarded by Cincinnati.

**REQUEST FOR PRODUCTION NO. 24:**  Please produce the first medical record(s) which you believe shows that Plaintiff suffered a serious and permanent injury as a result of the accident on June 27, 2001.

**RESPONSE:**  Responsive documents include all medical records, reports, bills, expert disclosures, discovery responses, pleadings, doctors' depositions, stipulated exhibits and evidence, in connection with the uncontroverted proof in the underlying suit.  Such documents show that Lisa Pumphrey's pain, difficulties and restrictions were the same from the day of the injury onward, were caused by the wreck, and resulted in her being permanently disabled.  Cincinnati is in possession of all such documents now and so they need not be reproduced.

Pursuant to L.R. 26.3(c)(2) counsel exchanged detailed, comprehensive correspondence regarding the discovery at issue in this motion.  Plaintiff refused to amend or supplement her discovery responses and Defendant Cincinnati Insurance was therefore forced to file this motion to compel.  Plaintiff opposes this motion.

**SUPPLEMENTAL RESPONSE March 28, 2007:** As further clarification regarding the serious and permanent nature of Plaintiff's injuries: Cincinnati knew

from day one that its insured admitted he was traveling about 35 MPH and barely braked before crashing into Plaintiff's vehicle. The force of the crash pushed her vehicle into the stopped car ahead of her, driven by her then-fiance Sean Pumphrey. Lisa was turned to the right when the double impact occurred. All three vehicles were totaled in the crash, a fact stipulated to at trial, by Cincinnati's insured.

The sole issue was damages. Plaintiff was receiving medical treatment and incurring medical expenses which were never disputed or controverted by any evidence or witness. Cincinnati had access to Lisa's medical records throughout, and was even given a signed medical authorization to obtain her records directly from her providers, which the company never used. Lisa's medical records and doctors' reports and depositions (and affidavit of treating neurologist Dr. Edward Isaacs) showed that her complaints and symptoms were consistent with a high speed impact of this sort and were caused by the wreck.

While x-rays and non specialists were incapable of showing her injuries, MRI and specialist care from her treating neurologist and treating orthopedic surgeon showed her traumatic injuries. She had unrelenting and consistent pain, difficulties, and restrictions since the wreck; a torn shoulder meniscus (surgically repaired); herniated discs at C5-6, and displaced ribs. As early as March 2002, neurologist Dr. Isaacs reported that Lisa's injuries were caused by the wreck and were preventing her from returning to law school.

**We specifically identify the records and reports of neurologist Dr. Isaacs**. We also identify Plaintiff's statement of the effect of the injury on her activities and life, exhibit 27 to the Fitz deposition.

Medical causation was reiterated and confirmed by Lisa's treating physicians during their depositions, during which Cincinnati's insured stipulated to the admission of Exhibits 40, 41, 42, 44, and 45 showing her traumatic injuries and connecting them to the car wreck and confirming that Lisa's pain, difficulties and restrictions since the car wreck were all a result of her injuries.

Cincinnati Insurance Company's brief in support of this motion will be filed within 5

business days.

DATED:  this 2nd day of April, 2007.

By____/s/ Ian McIntosh_____
Ian McIntosh
CROWLEY, HAUGHEY, HANSON, TOOLE &
DIETRICH P.L.L.P.
Attorneys for Defendants